UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**ALISON HELMS**, *as Executrix of the*
*Estate of Thomas H. Grant,*

                       **Plaintiff,**                     09-CV-0793A(Sr)

v.

**THE VANGUARD GROUP, INC.,**

                       **Defendant.**

---

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #4.

Currently before the Court is plaintiff's letter request to compel defendant to provide more complete responses to Request No. 3 and Request No. 5 of Plaintiff's First Set of Interrogatories and to respond to Plaintiff's First Set of Interrogatories and Plaintiff's Request to Admit, as well as plaintiff's request for an extension of time to notify the Court of any disputes relating to plaintiff's Second Set of Interrogatories.

This action was commenced by verified complaint filed September 9, 2009, alleging that The Vanguard Group, Inc. ("Vanguard"), improperly reversed transfers of $123,671.63 from a joint account in the names of Thomas H. Grant and his

spouse, Dorothy Grant, to an individual account in the name of Thomas H. Grant. Dkt. #1. Plaintiff Alison B. Helms, niece of Thomas H. Grant and executrix of his estate, alleges that she executed the transfer of funds from the joint account into the individual account at Mr. Grant's request during April and May of 2007 pursuant to a valid and enforceable power of attorney. Dkt. #1. Mr. Grant died on May 30, 2007. Dkt. #1. The transferred funds were returned to the joint account on or about October 17, 2007, at which time his surviving spouse transferred the funds into an individual account in her name. Dkt. #1.

Plaintiff alleges that Vanguard: (1) breached its agreement with Mr. Grant by denying his authority to transfer shares online; (2) breached its fiduciary duty to Mr. Grant and his estate when it reversed the online transactions; (3) misappropriated funds from Mr. Grant and his estate when it reversed the online transactions; (4) wrongfully converted assets of the estate to Mr. Grant's spouse; and (5) breached its duty of reasonable care in its investigation of the online transfers. Dkt. #1. Vanguard alleges that Ms. Helms effectuated the transactions by impersonating Mr. Grant, without Mrs. Grant's knowledge, contrary to the established procedures which Vanguard had informed Ms. Helms were required to permit her to act on Mr. Grant's behalf. Dkt. #2. Vanguard asserts numerous affirmative defenses to the action, including fraud and illegality. Dkt. #2.

Plaintiff's First Request for Production of Documents

Request No. 3 of Plaintiff's First Request for Production of Documents seeks documents exchanged between Mrs. Grant and defendant. Request No. 5 of

Plaintiff's First Request for Production of Documents seeks documents concerning the accounts. Vanguard produced documents relating to Mr. Grant's accounts, including the joint account up to October 17, 2007, when Vanguard cancelled the transfers and returned the assets to the surviving account owner, Mrs. Grant, but declines to disclose documents relating to Mrs. Grant's accounts subsequent to October 17, 2007 because of confidentiality owed to non-parties and lack of relevance to the issues in this action.

Plaintiff argues that documents exchanged between Mrs. Grant and Vanguard subsequent to October 17, 2007 will shed light on Vanguard's adherence to the policies it relied upon in determining to reverse the transfers by Ms. Helms into Mr. Grant's individual account, which would undermine Vanguard's justification for the reversal of those transactions. More specifically, plaintiff argues that evidence that Vanguard has not followed its policies and the situations in which it has deviated from its policies are relevant to determining the validity of Vanguard's defenses in this action.

The Court declines to direct Vanguard to disclose documents relating to Mrs. Grant's individual accounts. If it is determined that Ms. Helms' transfers to Mr. Grant's individual account were proper and/or that the reversal of those transfers was improper, Vanguard will be responsible for plaintiff's damages. Conversely, if it is determined that Ms. Helms' transfers to Mr. Grant's individual account were improper and/or that the reversal of those transfers was proper, plaintiff would have no interest in the subsequent disposal of those funds. Because any funds contained in or returned to the joint account subsequent to Mr. Grant's death belonged to Mrs. Grant, a non-party,

by virtue of the rules regarding joint tenancy and rights of survivorship, Vanguard need not disclose such documents. Contrary to plaintiff's argument, the Court finds it irrelevant to the issues in this action whether Vanguard accepted a facsimile of Mrs. Grant's power of attorney to allow Mrs. Grant's daughter to conduct transactions regarding the account subsequent to the return of the disputed funds. Vanguard's alleged reliance upon a facsimile versus an original power of attorney with respect to Mrs. Grant is not remotely equivalent to the factual circumstances alleged in the instant case, *to wit*, that instead of obtaining an agent authorization form or submitting a power of attorney to Vanguard, plaintiff used Mr. Grant's personal information to register his Vanguard accounts for electronic access and then used this access to transfer funds out of the joint account and into Mr. Grant's individual account.

Plaintiff's First Set of Interrogatories

Vanguard objects to the First Set of Interrogatories, which were served August 6, 2010, as untimely, however, the Case Management Order clearly states that the deadline for completion of all discovery was November 12, 2010. Dkt. #18. Vanguard also objects that the interrogatories exceed the 25 interrogatory limit set by Rule 33(a)(1) of the Federal Rules of Civil Procedure, however, a review of the interrogatories by the Court supports plaintiff's argument that the subparts are directly related to the numbered interrogatory and comport with Rule 33(a)(1).

Interrogatory No. 1 seeks information regarding the disposition of funds returned to the account on October 17, 2007; Interrogatory No. 2 seeks information

regarding every account opened at Vanguard by Mrs. Grant; and Interrogatory No. 3 seeks information regarding every sale, transfer, exchange or redemption of funds from every account opened at Vanguard by Mrs. Grant.  For the reasons previously set forth by the Court, Vanguard is not required to respond to these interrogatories.

*Interrogatory No. 4*

>Interrogatory No. 4 seeks the following information:
>
>State whether after learning about the "Systems issue" referenced in the letter from Brian Donadio to Kimberly W. Sayoc, dated April 28, 2008, produced by Vanguard in this action and identified as document VGI 000234, Vanguard investigated if any unlike exchanges (as defined in Vanguard's policies) that were not supposed to be permitted via the Internet occurred and, if they did, identify the following: (a) the time period that was reviewed; (b) any reports that were prepared and their conclusion or findings; (c) the number and kinds of such transactions that occurred; and (d) Vanguard's response to each such transaction (*e.g.*, whether Vanguard reversed or cancelled the transaction or allowed it to stand) and the reason therefore.

Vanguard responds that it should not be compelled to provide information about how a computer systems issue affected other accounts at Vanguard and whether Vanguard's response was consistent across all of the accounts affected.  Vanguard explains that the computer system should not have allowed transfers to occur over the internet between accounts with unlike registrations, *i.e.*, from joint accounts into individual accounts.  Vanguard previously produced an email alerting systems to fact that

>Automatic Exchange Service was established from the joint [account] to an individual account in the name of Thomas Grant.  Mr. Grant passed away shortly thereafter.  Ms.

> Grant, in effect, lost ownership of the joint account as Mr. Grant did not leave these assets to her in his will. According to the rules of [Automatic Exchange Service], this transaction should not have been established on the web.

In response, another Vanguard employee indicated that:

> This issue creates exposure to potential losses. We need to get this corrected asap. Hoping you can help us get this prioritized. We may need to get a report of how many joint to individual [Automatic Exchange Services] have been set up on the web for this year or since the time it became possible to do this if we can figure that out.

At a discovery conference on November 15, 2010, the Court directed Vanguard to determine whether such a report was completed. Vanguard determined that

> there was no investigation to determine whether any prior incidents occurred, and, as a result, no backward-looking report was completed. Instead, Vanguard made correcting the computer-programming issue a high priority and adopted prophylactic measures to safeguard its customers against the possible exploitation of the systems issue, as was done by Ms. Helms. Those measures included a forward-looking review of all [Automatic Exchange Service] transactions that took place via the website in which money was transferred from a joint account to an individual account while the code was being corrected. The forward-looking review started in September 2007 and ended in December, 2007, when the systems issue was corrected.

Plaintiff argues that Vanguard should be compelled to produce the spreadsheet of internet transfers from joint to individual accounts from September to December 2007 as such transactions were in violation of its asserted policy against such transfers but were not reversed by Vanguard.

-6-

The Court declines to compel Vanguard to disclose the spreadsheet. Whether or not Vanguard consistently enforced its policies regarding automatic exchange service between joint and individual accounts will not affect the determination of whether Vanguard was legally justified, based on the admissible facts to be presented in dispositive motions or at trial, in reversing this transaction.  In other words, even assuming that Vanguard failed to properly verify the legal authority of significant numbers of individuals to transfer funds from joint to individual accounts, such a failure on Vanguard's part would not affect their right or obligation to properly verify the legal authority of plaintiff to do so.  Moreover, disclosure of the spreadsheet can only lead to mini trials within this trial as to the factual distinctions between the transfers at issue in this action and a myriad of other confidential financial transactions involving non-parties to this action.

Plaintiff's Requests to Admit

Vanguard objects to Plaintiff's Request to Admit, which was served on August 30, 2010, as untimely, however, the Case Management Order clearly states that the deadline for completion of all discovery was November 12, 2010.  Dkt. #18. Vanguard also objects on the ground that the requests are misleading in that they purport to selectively quote from a recording.  The first request is as follows:

> During the October 22, 2007, telephone call between Phyllis Bronson, an employee of Defendant, and Plaintiff and her attorney Victor Gagliardi, as recorded by Defendant, Ms. Bronson states the following between approximately 26:14 and 26:18 of the recording regarding the registration form signed by Thomas and Dorothy Grant establishing the Joint Vanguard Accounts: "Our firm has an obligation, that's a contract with Vanguard."

The second request is as follows:

> During the October 22, 2007, telephone call between Phyllis Bronson, an employee of Defendant, and Plaintiff and her attorney, Victor Gagliardi, as recorded by Defendant, Ms. Bronson states the following between approximately 26:26 and 26"32 of the recording regarding the registration form signed by Thomas and Dorothy Grant establishing the Joint Vanguard Accounts: "They signed a contract with Vanguard when they signed the account registration form that said it's rights of survivorship."

Vanguard's objections to the Requests to Admit do not justify refusal to respond. Rule 36(1)(4) contemplates that a responding party may have a good faith basis to qualify an answer, but does not permit the party to refuse to answer on the ground that such a qualification may be necessary to provide context or completeness to the statement sought to be admitted. Vanguard shall properly respond to the Requests to Admit within ten (10) business days of the entry of this Decision and Order.

Plaintiff's Second Set of Interrogatories

Plaintiff's Second Set of Interrogatories ask whether, from January 2006 through the present: (1) Vanguard has ever accepted an agent authorization form or power of attorney form for any account that was a copy or facsimile of such document; and (2) there has ever been an instance in which a non-account owner for whom no agent authorization form or power of attorney form was then on file with Vanguard has transacted in an account, *via* the internet or in any other way, and Vanguard allowed such transactions to stand subject to the subsequent receipt of an agent authorization form, power of attorney form or any other kind of written authorization giving the non-account owner authority to make such transactions.

By timely response dated October 13, 2010, which was less than 30 days prior to the close of discovery, and therefore one day beyond the deadline set forth in the Case Management Order to file applications to resolve discovery disputes, Vanguard objected to these interrogatories on numerous grounds, including that the interrogatories are overbroad, unduly burdensome and seek information that is not reasonably calculated to lead to the discovery of admissible evidence relevant to the claims or defenses in this action and that Vanguard's acceptance of agent authorization forms or power of attorney forms from other Vanguard customers has no bearing on the claims and defense in this litigation.

Setting aside arguments of timeliness, the Court agrees with Vanguard that the plaintiff's second set of interrogatories are overbroad, unduly burdensome, and for reasons previously set forth by the Court, unlikely to lead to the discovery of admissible evidence relevant to the claims asserted in this action.

**SO ORDERED.**

**DATED:**   Buffalo, New York
July 27, 2011

                                                 **s/ H. Kenneth Schroeder, Jr.**
                                                 **H. KENNETH SCHROEDER, JR.**
                                                 **United States Magistrate Judge**